IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| RICHARD L. ALLEN, | ) | |
| | ) | |
| Petitioner, | ) | 4:07CV3036 |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT HOUSTON, | ) | MEMORANDUM AND ORDER ON |
| | ) | RESPONDENT'S MOTION FOR |
| Respondent | ) | SUMMARY JUDGMENT |
| | ) | |

On February 5, 2007, Richard L. Allen filed a petition for a writ of habeas corpus. (See filing 1.) See also 28 U.S.C. § 2254. Pursuant to Rules 4 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts, United States Magistrate Judge F. A. Gossett conducted an initial review of the petition. (See filing 4.) The magistrate judge "question[ed] the timeliness of the § 2254 petition in light of the statute of limitations applicable to habeas corpus cases in federal court," but determined that "the parties should be heard on the matter" and ordered the respondent, Robert Houston, to "answer or otherwise respond to the § 2254 petition." (Id. at 1-2.) The respondent has filed a motion for summary judgment. (See filing 5.) For the following reasons, I find that the respondent's motion must be denied.

**I. BACKGROUND**

The petitioner is an inmate presently confined in the Tecumseh State Correctional Institution (TSCI) in Tecumseh, Nebraska, after having pleaded "nolo contendere" to a charge of "First Degree Sexual Assault." (Filing 1 at 1; see also Designation of State Court Records (R.), filing 6, Ex. 1 at 5.) On July 17, 2001, the District Court of Lancaster County, Nebraska, sentenced the petitioner to a term of incarceration between twenty and thirty years. (See R., filing 6, Ex. 1 at 28.) The district court's judgment was summarily affirmed by the Nebraska Court of Appeals on January 31, 2002, and a mandate issued on March 6, 2002. (Id., Ex. 2 at 2.) The record suggests that the petitioner did not seek further direct review of his conviction or

1

sentence. (See id.)

On August 18, 2003, the petitioner filed a "Verified Motion for Post-conviction Relief" in the District Court of Lancaster County, Nebraska. (R., filing 6, Ex. 3 at 10.) It appears that the district court dismissed this motion in an order dated January 8, 2004, (id., Ex. 3 at 35-37), and the Nebraska Court of Appeals summarily affirmed the district court's judgment on July 9, 2004. (Id., Ex. 4 at 2.) The petitioner filed a petition for further review on August 13, 2004, but the Nebraska Supreme Court overruled the petition "as untimely filed." (Id.) The Nebraska Court of Appeals' mandate issued that same date. (See id.; see also id., Ex. 3 at 90.)

On June 20, 2005, the petitioner filed a "Successive Motion to Vacate and Set Aside Conviction" in the District Court of Lancaster County. (R., filing 6, Ex. 5 at 4.) In an order dated June 23, 2005, the district court denied the petitioner's motion to proceed in forma pauperis, stating that "the proceeding lacks legal merit." (Id., Ex. 5 at 2.) The Nebraska Court of Appeals summarily affirmed the district court's judgment on November 15, 2005, and the Nebraska Supreme Court overruled the petitioner's petition for further review on February 1, 2006. (See id., Ex. 6 at 1-2.) The Nebraska Court of Appeals' mandate issued on February 23, 2006. (See id., Ex. 5 at 3.)

On February 5, 2007, the petitioner filed the instant petition for a writ of habeas corpus. (See filing 1.) His petition raises two separate grounds for relief. (See id. at 5-6.) First, the petitioner alleges that he was denied the effective assistance of counsel at trial; more specifically, he argues that "[d]efense counsel failed to investigate, discover and assert (for trial or sentencing purposes) [his] diminished mental capacity circumstance that prevented him from being able to formulate the mental degree of culpability necessary to support a felony criminal conviction for first degree sexual assault in the State of Nebraska." (Id. at 5.) Second, he alleges the existence of "[p]lain error constituting [a] Fourteenth Amendment due process violation." (Id. at 6.) In support of this claim, the petitioner asserts that "[t]he judge in this case erroneously advised [him] that he had waived his right to appeal his no-contest plea," which prejudiced him, "inter alia, by causing him to unknowingly waive his last chance to have had conflict free counsel . . . to assist him with asserting ineffective assistance of counsel against his plea and sentencing attorney on direct appeal." (Id.)

The petition is accompanied by a document entitled "Affidavit Re: AEDPA Limitations." (See filing 2.) In this affidavit, the petitioner states that he "was being administered ten different prescription medications by [TSCI] medical department personnel during those times when his first motion for postconviction relief was being prepared for him: Prozac, Zantac, Amitriptyline, Mevacor, Antivert, Ecotrin, Verapamil, Hydrodiuril, Keflix, Naprosen Tylenol, and Tums." (Filing 2 at 1.) He adds,

> These are needed to treat mental health disabilities [the petitioner] sustained in October of 1993 when he was struck on the head by a metal hook attached to a 30-ton crane while working on the Burlington Northern Railroad, and resultant specific symptoms, described by his attending physician as: light-headedness, impaired memory, reduced attention span, intractibility [sic] to comprehend, inability to grasp new concepts, insomnia, depression, frustration, mood swings, somnolence, intractible [sic] migraine, post-traumatic headache disorder, and occasional episodes of personality change.
>
> . . . Because of his mental disability, Petitioner Allen cannot manage complex thought-manipulation processes like those required to research and verbalize in written form, law and facts necessary to perfect a competent motion for postconviction relief on his own.

(Id. at 1-2.) In addition, the petitioner's affidavit states that "throughout the period of time when the AEDPA limitations period was running in his case, the TSCI law library program has been inadequate to render him capable of securing a meaningful access to the courts relevant to the instant federal habeas corpus action." (Id. at 2.)

## II.  STANDARD OF REVIEW

A motion for summary judgment shall be granted by the court when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See also Lamp v. State of Iowa, 122 F.3d 1100, 1104 (8th Cir. 1997); Rule 11 Governing Section 2254 Cases in the United States District Courts (providing that the Federal Rules of Civil Procedure may be applied in § 2254 proceedings "to the extent that they are not inconsistent with any statutory provisions or these rules"). In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). If the moving party

3

meets the initial burden of establishing the nonexistence of a genuine issue, then the burden shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986), and "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," id. at 256 (citing Fed. R. Civ. P. 56(e)).

### III. ANALYSIS

The respondent's motion for summary judgment asserts that the petitioner did not file his application for federal habeas corpus relief within the applicable limitations period. "The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, sets a one-year statute of limitations for seeking federal habeas corpus relief from a state-court judgment." Lawrence v. Florida, 127 S. Ct. 1079, 1082 (2007) (citing 28 U.S.C. § 2244(d)(1)). This one-year limitation period runs from the latest of the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). In addition, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

The respondent argues that the petition was not filed within one year of "the date on

which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). (See also filing 5.) I agree. As noted above, the Nebraska Court of Appeals summarily affirmed the district court's judgment on January 31, 2002; the mandate issued on March 6, 2002; and the petitioner did not seek further direct review of his conviction or sentence. In accordance with Eighth Circuit precedent, the one-year limitations period specified in § 2244(d)(1)(A) began to run ninety days after the issuance of the mandate on March 6, 2002, which was June 4, 2002. See Pierson v. Dormire, No. 06-2545, 2007 WL 984104 (8th Cir. Apr. 4, 2007) (holding that petitioner who failed to seek discretionary direct review from the Missouri Supreme Court was nevertheless entitled to the benefit of tolling during the ninety-day period for seeking a writ of certiorari from the Supreme Court); Nichols v. Bowersox, 172 F.3d 1068, 1072 (8th Cir. 1999) (en banc) (same); see also Neb. Rev. Stat. § 24-1107 ("Within thirty days after the Court of Appeals has issued its decision in a case, any party to the case may petition the Supreme Court for further review of the decision in the manner prescribed by the rules of the Supreme Court."). Thus, the one-year limitations period expired on June 4, 2003. Although the days during which the petitioner's applications for state post-conviction relief were pending might have been excluded from the computation of the deadline, here the petitioner did not file his first application for state post-conviction relief until August 18, 2003, which is more than two months after the expiration of the limitations period running from the date specified in § 2244(d)(1)(A). Therefore, the tolling provision set forth in § 2244(d)(2) does not avail the petitioner–at least insofar as the limitations period set forth in § 2244(d)(1)(A) is concerned. See Curtiss v. Mount Pleasant Correctional Facility, 338 F.3d 851, 853-55 (8th Cir. 2003); Painter v. Iowa, 247 F.3d 1255 (8th Cir. 2001).

There is no indication that the petition was filed within one year of the dates specified in § 2244(d)(1)(C) or (D). The affidavit accompanying the petition does suggest, however, that the applicable limitations period runs from the date specified in § 2244(d)(1)(B).[1] Therefore, I must

---

[1] In his brief opposing the respondent's motion for summary judgment, the petitioner argues specifically that the limitations period was "toll[ed]" under § 2244(d)(1)(B). (See filing 7 at 2-4.) The petitioner's brief, which was not filed until May 8, 2007, was not filed timely. (See filing 4 at 2.) However, because the arguments set forth in the petitioner's brief are based directly upon the affidavit that was filed with the petition, it makes little practical difference

determine whether there is a genuine issue as to whether the petitioner faced an "impediment to filing an application created by State action in violation of the Constitution or laws of the United States" that prevented him from filing his application for habeas corpus relief. 28 U.S.C. § 2244(d)(1)(B). See also, e.g., Lloyd v. Van Natta, 296 F.3d 630, 633 (7th Cir. 2002) ("Although neither § 2244 nor this circuit has defined what constitutes an 'impediment' for purposes of § 2244(d)(1)(B), the plain language of the statute makes clear that whatever constitutes an impediment must prevent a prisoner from filing his petition."); Neuendorf v. Graves, 110 F. Supp. 2d 1144, 1153 (N.D. Iowa 2000) ("A petitioner relying on [§ 2244(d)(1)(B)] for the limitation period for a federal habeas action must 'allege facts that establish that he . . . was so inhibited by the State's action that he was unable to file and state a legal cause of action before the limitation period expired.'" (quoting Whalem/Hunt v. Early, 204 F.3d 907, 909 (9th Cir. 2000))).

It seems to me that there is a genuine issue as to whether the petitioner faced an impediment stemming from "State action in violation of the Constitution or laws of the United States." 28 U.S.C. § 2244(d)(1)(B). More specifically, the petitioner has submitted undisputed evidence that is sufficient to raise a genuine issue as to whether the prison officials at TSCI denied him meaningful access to the courts. (See filing 2 at 2-3.)

> The Supreme Court has held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977). Nevertheless, Bounds "did not create an abstract, freestanding right to a law library." Lewis v. Casey, 518 U.S. 343, 351, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996). Instead, prison officials must provide inmates with "meaningful access to the courts," Bounds, 430 U.S. at 824, and providing a law library is merely one way to comply with this obligation. Because "meaningful access to the courts is the touchstone," id. at 823 (internal quotation omitted), an inmate alleging a constitutional violation must show an "actual injury" by "demonstrat[ing] that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Lewis, 518 U.S. at 351.

Entzi v. Redman, No. 06-2116, 2007 WL 1296815 (8th Cir. May 4, 2007).

---

whether I consider the brief or disregard it on the ground that it is untimely.

The petitioner's affidavit states,

> C. Also, Petitioner Allen asserts that throughout the period of time when the AEDPA limitations period was running in his case, the TSCI law library program has been inadequate to render him capable of securing a meaningful access to the courts relevant to the instant federal habeas corpus action. This is seen where the TSCI law library program includes no prison staff or inmate legal aide employee who is trained in the law by an accredited learning institution and qualified to deliver competent legal assistance to inmates housed at the TSCI. The DCS law program only requires inmate legal aides to attend a battery of 4 to 6-weeks of 1-day-per-week instructional sessions that do not qualify a person to deliver competent criminal case legal advice or assistance. And neither currently employed TSCI inmate legal aides, nor those employed at the TSCI law library while petitioner Allen's 1-year limitations period was running, have completed those training sessions.
>
> D. Current policy governing application of the inmate law program at the TSCI prohibits delivery of its services to any inmate who is not illiterate. Petitioner Allen is not illiterate; and, non[e] of the TSCI legal aides or other law library employees who Petitioner Allen approached with questions about, or requests for, legal assistance with his case, ever advised Allen that the AEDPA exists or that its terms required him to comply with a 1-year limitations requirement.
>
> E. TSCI inmate law program rules and regulations also prohibit Petitioner Allen's current legal assistant, who is not employed through the TSCI inmate law program, from being in possession of Allen's legal papers as necessary to ensure what help he can obtain using this constitutionally authorized prisoner court access medium. . . .

(Filing 2 at 2-3.) The affidavit adds that the petitioner's "inmate legal assistant has personal legal work of his own to do, and the Respondent or his agents continue to deny Allen's present legal assistant's request for extra time in the law library to accommodate his efforts to provide Allen with the legal assistance he needs." (Id. at 3.)

Notably, the petitioner does not claim that the law library available to him was inadequate or deficient in any way or that his access to the library was restricted; instead, he claims only that he has not received adequate legal assistance to help him prepare his petition. (See filing 2 at 2-3; see also filing 7 at 4.) The petitioner also claims, however, that "[b]ecause of his mental disability, [he] cannot manage complex thought-manipulation processes like those required [sic] to research and verbalize in written form, law and facts necessary to perfect a competent motion

7

for postconviction relief on his own," (filing 2 at 2), and he has submitted records that appear to support his description of his injury, symptoms, and medication regimen, (see filing 2, attach. at 1-19).

Given the undisputed evidence describing the petitioner's disability, his inability to file his petition without assistance, and the failure of the prison officials at TSCI to provide him with adequate assistance, there is a genuine issue whether the filing of the petition was impeded by State action in violation of the Constitution. Cf. Lewis v. Casey, 518 U.S. 343, 356 (1996) (noting that illiterate and non-English-speaking prisoners whose cases were dismissed because they received inadequate legal assistance presented actionable "access-to-courts" cases). Similarly, it seems to me that there remains a genuine issue as to whether this impediment prevented the petitioner from filing his application for habeas relief, and it is unclear when, if ever, the impediment was removed. In sum, there is a genuine issue whether the petition was timely under 28 U.S.C. § 2244(d)(1)(B) and (d)(2).

The petitioner has also argued that equitable tolling is warranted by the same facts that support his claim that § 2244(d)(1)(B) establishes the limitation period applicable to his petition. Equitable tolling may be appropriate if "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time," or "when conduct of the defendant has lulled the plaintiff into inaction." Kreutzer v. Bowersox, 231 F.3d 460, 463 (8th Cir. 2000). "The doctrine applies 'only when some fault on the part of the defendant has caused a plaintiff to be late in filing, or when other circumstances, external to the plaintiff and not attributable to his actions, are responsible for the delay.'" Shoemate v. Norris, 390 F.3d 595, 597 (8th Cir. 2004). Since I have determined that there remains a genuine issue as to whether the petitioner was prevented from filing his federal habeas petition due to the State's alleged denial of the petitioner's right of access to the courts, I find, for the same reasons, that there remains a genuine issue regarding the availability of equitable tolling.[2]

---

[2] I note in passing that the respondent's motion for summary judgment does not address the timeliness of the petition under the limitations period specified in § 2244(d)(1)(B) or the question of equitable tolling, and the respondent did not file a reply to the petitioner's response brief.

**IT IS ORDERED** that the respondent's motion for summary judgment, filing 5, is denied.

Dated May 29, 2007.

        BY THE COURT

        s/  Warren K. Urbom
        United States Senior District Judge