IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| RICHARD L. ALLEN, | ) | |
| | ) | |
| Petitioner, | ) | 4:07CV3036 |
| | ) | |
| V. | ) | |
| | ) | |
| ROBERT HOUSTON, | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| Respondent. | ) | |

Despite several extensions, Petitioner failed to submit a response to Respondent's answer and he also failed to file a brief. After carefully reviewing the state court records, additional affidavits, and Respondent's brief, the Petition for Writ of Habeas Corpus will be denied. The statute of limitations ran before Petitioner filed his federal action. Moreover, even if the statute of limitations had not run, Petitioner is not entitled to relief.

## *I. BACKGROUND*

It is helpful to discuss the background of this case in segments. That is, it is instructive to separately review the plea and sentencing, the direct appeal, the first state post-conviction action and appeal, the second post-conviction action and appeal, the third post-conviction action and this federal action.

### *A. Plea and Sentencing*

With the assistance of attorney Patrick O'Brien, Petitioner, Richard L. Allen, entered a plea of no contest to sexually assaulting an 84-year old woman, as she slept in her darkened bedroom, during the early morning hours of July 2, 2000. The plea was presented to the Honorable Karen B. Flowers, a Nebraska district judge, on May 14, 2001. (Filing No. 12-2, Attach. 1, at CM/ECF pp. 5-15; Filing No. 12-3, Attach.

2, at CM/ECF pp. 1-20.)

Allen advised the court that he wanted to plead no-contest, and after that, he was re-arraigned on the sexual assault charge and advised that he faced not less than 1 year nor more than 50 years in prison. (Filing No. 12-2, Attach. 1, at CM/ECF pp. 6-7.) He said he understood the charges and the penalties and then entered his plea of no-contest. (*Id.*)

Allen, who was then 54 years of age, told Judge Flowers that he had graduated high school; that he had received technical training with the railroad; that he suffered a head injury in 1993 while working for the railroad and that he was on disability retirement as a result. (*Id.* at CM/ECF pp. 7-8.) Judge Flowers closely questioned Allen about his physical and mental condition. Petitioner responded that he was taking several prescribed medications, which he listed, and that he would not be able to function well if he did not take those drugs; that he was not under the care of a psychiatrist; that he sometimes suffered from headaches and became dizzy as a result of the injury and the medications; that, on the day of the plea, he was feeling "[o]kay" and was free of headaches and dizziness; and that he had taken no medications, other than his prescribed medications, or any alcohol or any controlled substances at the time he stood before the judge. (*Id.* at CM/ECF pp. 7-10.)

The judge asked Allen about his lawyer. Allen responded this way:

> THE COURT: . . . Has Mr. O'Brien explained to you the charge that is set forth in Count I of the Information?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Have you had an opportunity to talk with him about any and all possible defenses that he thinks you might have

to that charge?

THE DEFENDANT: Yes.

THE COURT: Have you told him everything you know about this trial [sic]?

THE DEFENDANT: Yes.

THE COURT: Is there anything that could help you, that you haven't told your lawyer yet?

THE DEFENDANT: No, ma'am.

THE COURT: Are you satisfied with the job that Mr. O'Brien has done for you in this case?

THE DEFENDANT: Yes, ma'am.

THE COURT: You believe that he is competent and knows what he is doing?

THE DEFENDANT: Yes, ma'am.

THE COURT: Have you had enough time to talk with him about this case?

THE DEFENDANT: Yes, ma'am.

THE COURT: Before we go any further, Mr. Allen, you want or need additional time now to talk with Mr. O'Brien again about this case?

THE DEFENDANT: No, ma'am.

([Filing No. 12-3, Attach. 2](), at CM/ECF pp. 3-4.)

The judge inquired about a plea agreement. Counsel informed the judge, and then Allen confirmed, that in exchange for a no-contest plea to the sexual assault charge, the prosecutor would dismiss the related burglary charge. (*Id*. at CM/ECF pp. 4-5). There was no other agreement. (*Id.*)

The uncontested evidence against Allen, presented by the prosecutor in great detail as the factual basis for the plea, included very damaging admissions Allen made to third-parties and the police both before and after he had been given his *Miranda* rights. (*Id*. at CM/ECF pp. 5-18.) For example, the morning after the assault, Allen told a coworker that "I am in trouble" and that he "had broken into someone's house" and "I am going to the penitentiary." (*Id*. at CM/ECF p. 14.) While denying he had intercourse with the victim, Allen told the police that "she probably started screaming" and "he probably did touch her vagina for foreplay." (*Id*. at CM/ECF p. 17.) Although the victim did not recognize her assailant during the assault, Allen admitted that he knew his victim and harbored a grudge against her. (*Id*. at CM/ECF p. 16-17.) Indeed, he told the police he "disliked her greatly." (*Id*. at CM/ECF p. 16.)

The assault, which spanned about three hours, was barbarous and the victim suffered significant injuries such as a tear of her rectum. (*Id*. at CM/ECF pp. 6-7.) The attack was fueled by Allen's abuse of alcohol. (*Id*. at CM/ECF pp. 15-16.)

After assuring herself that Allen's no-contest plea was knowing, intelligent and voluntary, and that there was a factual basis for it, Judge Flowers accepted the plea and found Allen guilty. (*Id*. at CM/ECF p. 19-20.) The prosecutor moved to dismiss the burglary charge and the judge granted the motion. (*Id*. at CM/ECF p. 20.) The judge ordered a presentence investigation report and set the matter for sentencing. (*Id.*)

Following a review of the presentence report, and after listening to the lawyers

and giving Allen a chance to speak (which he declined), the judge sentenced Allen on July 17, 2001. (*Id.* at CM/ECF pp. 21-35.) O'Brien argued for leniency and pointed out that Allen had committed no other crimes of violence, that Allen suffered from a head injury "some eight or nine years ago" and "subsequent to that period" Allen "had considerable trouble with alcohol" ending up at "Valley Hope," a treatment center. (*Id.* at CM/ECF pp. 24-25.)

Observing that the assault was violent, that "the victim was terrorized for three hours" and that the victim was "particularly vulnerable[,]" Judge Flowers sentenced Allen to not less than 20 years nor more than 30 years in prison. (*Id.* at CM/ECF p. 34.) The judge specifically added that her sentence "does consider the things Mr. O'Brien, on your behalf, asks that I consider" but "a lesser sentence will depreciate the seriousness of the offense." (*Id.* at CM/ECF p. 35.) The judge informed Allen about his parole rights. She said that he would be eligible for parole in 10 years and, assuming "good time," would be "mandatorily discharged after having served 15 years." (*Id.* at CM/ECF pp. 34-35.)

### B. The Direct Appeal

On behalf of Petitioner, Mr. O'Brien perfected a direct appeal to the Nebraska Court of Appeals and in his brief argued that the sentence was excessive and that the victim suffered no serious bodily injury. (Filing No. 12-8, Attach. 7, at CM/ECF pp. 40-56.) The State of Nebraska responded by submitting a brief and motion for summary affirmance arguing that the sentence was not excessive and that victim had clearly suffered serious bodily injury as reflected in the statements the police obtained from the hospital. (*Id.* at CM/ECF pp. 59-68.) On January 31, 2002, the Nebraska Court of Appeals summarily affirmed the conviction and sentence. (Filing No. 12-10, Attach. 9, at CM/ECF p. 2.) No petition for further review was submitted to the Nebraska Supreme Court. (*Id.*) The mandate was issued on March 6, 2002. (*Id.*)

## C. First State Post-Conviction Action and Appeal

On August 18, 2003, Allen, appearing pro se, filed his first motion for state post-conviction relief. (Filing No. 12-11, Attach. 10, at CM/ECF pp. 10-23.) Allen raised the following arguments: (1) the county court lacked subject matter jurisdiction (*id*. at CM/ECF pp. 12-14); (2) the county court lacked personal jurisdiction (*id*. at CM/ECF pp. 14-15); (3) Judge Flowers abused her discretion by accepting the no-contest plea when she knew that Allen was taking several medications as a result of his 1993 head injury (*id*. at CM/ECF pp. 16-18); (4) O'Brien was ineffective because he advised Allen to waive a preliminary hearing and because he advised Allen to enter a no-contest plea knowing that his client was taking several medications as a result of his 1993 head injury (*id*. at CM/ECF pp. 18-20); and (5) O'Brien was ineffective because he failed to raise the county court jurisdictional issues and his own ineffectiveness on appeal (*id*. at CM/ECF pp. 20-22).

Judge Flowers considered the petition and, on January 9, 2004 (dated January 8, 2004), denied it in a thoughtful written opinion. (*Id*. at CM/ECF pp. 35-37.) Judge Flowers wrote that the petition must be denied, because, among other reasons, (1) the county court jurisdictional arguments, even if accepted as true, did not result in prejudice to Allen; (2) she did not abuse her discretion in accepting the no-contest plea since she was fully aware of Allen's medications and condition, since the defendant indicated that he needed and was taking his prescribed medications and since Allen told the judge he was feeling well enough to proceed; (3) applying *Strickland v. Washington*, 466 U.S. 668 (1984), O'Brien was not ineffective regarding the waiver of a preliminary hearing since Allen would have been bound over in any event; (4) applying *Strickland*, O'Brien was not ineffective by counseling Allen to enter a no-contest plea while taking medications and after a head injury for the same reason that Judge Flowers did not err in accepting the no-contest plea under those same circumstances; and (5) all claims should be denied because Allen failed to allege any facts that showed he was prejudiced. (Filing No. 12-11, Attach. 10, at

CM/ECF pp. 35-37.)

Allen perfected an appeal to the Nebraska Court of Appeals. The Court of Appeals summarily affirmed Judge Flower's written opinion on July 9, 2004. (Filing No. 12-13, Attach. 12, at CM/ECF p. 2.) On August 13, 2004, Allen filed a petition for further review. (*Id.*) However, the petition for further review was overruled because it was not timely filed. (*Id.*) The mandate issued on August 13, 2004. (*Id.*)

### D. Second State Post-Conviction Action and Appeal

Ten months or so later, and on June 20, 2005, Petitioner filed another post-conviction motion. (Filing No. 12-14, Attach. 13, at CM/ECF pp. 11-29.) He alleged that his counsel was ineffective because O'Brien failed to advise Allen about his right to assert a diminished capacity defense at trial and as a mitigating factor at sentencing (*id.* at CM/ECF pp. 20) and Judge Flowers plainly erred by accepting the no-contest plea and telling Allen he could not appeal his plea-based conviction. (*Id.* at CM/ECF pp. 25-27.)

On June 23, 2005, Judge Flowers denied Allen leave to proceed in forma pauperis because Allen was trying to raise in the second motion for post-conviction relief issues which could have been raised in the first motion and Nebraska law did not allow Allen to do so. (Filing No. 12-16, Attach. 15, at CM/ECF pp. 5-6.) Allen appealed and the Nebraska Court of Appeals summarily affirmed. (Filing No. 12-17, Attach. 16, at CM/ECF pp. 1-2.) Allen's petition for further review was overruled by the Nebraska Supreme Court and the mandate issued on February 23, 2006. (*Id.* at CM/ECF p. 2.)

### E. Third State Post-Conviction Action

On March 24, 2006, Allen filed a third motion for post-conviction relief raising essentially the same issues he had raised in the second motion. (Filing No. 12-18, Attach. 17, at CM/ECF pp. 2-20.) On July 6, 2006, Judge Flowers denied that motion as well because it failed to raise any new issues that could not have been raised earlier. (*Id.* at CM/ECF p. 1.) No appeal was taken from this decision.

### F. This Action

This action was filed on February 5, 2007. (Filing No. 1.) The petition raised two issues: (1) defense counsel was ineffective because counsel failed to investigate, discover and assert Allen's diminished capacity as a defense at trial or at sentencing (*id.* at CM/ECF p. 5); and (2) the trial judge committed "plain error" by telling Allen he had waived his right to appeal his no-contest plea (*id.* at CM/ECF p. 6).

Respondent filed a motion for summary judgment based upon the statute of limitations. That motion was denied, with the court stating:

> Given the undisputed evidence[1] describing the petitioner's disability, his inability to file his petition without assistance, and the failure of the prison officials at TSCI to provide him with adequate assistance, there is a genuine issue whether the filing of the petition was impeded by State action in violation of the Constitution.

(Filing No. 8 at CM/ECF p. 8.)

On June 7, 2007, Respondent answered. On August 27, 2007, the court entered an order directing Respondent to file the state court records and a brief. (Filing No. 11.) Despite the fact that the motion for summary judgment had been denied,

---

[1] When he filed this case, and in attempt to preempt the limitations bar, Allen also filed his own affidavit that recited the fact that he had a head injury, he was taking medications and he attached various medical records. (Filing No. 2 (styled "Affidavit Re: AEDPA Limitations").)

Respondent was directed to brief the statute of limitations issue as well as exhaustion, procedural default and the merits. (*Id.*) In addition, Petitioner was directed to file a responsive brief. (*Id.*)

As directed, Respondent filed the state court records on October 2, 2007. (Filing No. 12.) Among other things, those records included the Department of Correction's law library policy (filing no. 12-26, attach. 25, at CM/ECF p. 2), the affidavit of the prison library coordinator (filing no. 12-30, attach. 29), and an affidavit of a prison physician (filing no. 12-31, attach. 30) establishing that a law library and trained legal aides were available to Petitioner and Petitioner was not significantly impaired during the relevant time frame. Respondent also filed the required brief. (Filing No. 13.)

Despite the earlier directive, Petitioner did not file a responsive brief. The case sat for several months. Thereafter, and on the court's own motion, Petitioner was given until March 25, 2008, to file a responsive brief. (Filing No. 15.) On March 31, 2008, and instead of filing a brief, Petitioner filed a motion to appoint counsel supported by an affidavit. (Filings Nos. 16 and 17.) Respondent objected to the affidavit. (Filing No. 18.)

On May 30, 2008, Petitioner also filed the affidavit of Graylin Gray, an inmate who had assisted Petitioner. (Filing No. 19.) Gray recounted that, after he began helping Allen with his legal matters Gray became an inmate legal assistant. Gray stated that he did not know about the one-year statute of limitations. (*Id.* at CM/ECF pp. 1-2 & ¶ 3.) Gray also acknowledged that he failed to complete the legal aid training that was offered to him by the prison. (*Id.* at CM/ECF p. 2 & ¶ 2.)

On June 16, 2008, Petitioner's motion to appoint counsel was denied. (Filing No. 20.) Respondent's objection to Petitioner's affidavit in support of the motion to appoint counsel was likewise denied. (*Id.*) In addition, and on the court's own

motion, Petitioner was given until July 17, 2008, to file a response to Respondent's answer and a brief. (*Id.*) Allen failed to respond as directed.

## *II. ANALYSIS*

It is now apparent that the statute of limitations ran before this action was commenced and there is no basis for concluding that Petitioner was incapable of, or was prevented from, complying with the statute of limitations. Even if that were not the case, Petitioner's claims must be denied.

### *A. The Statute of Limitations Bars This Action*

The one-year statute of limitations found in 28 U.S.C. § 2244(d)(1) clearly ran by the time Petitioner filed this action on February 5, 2007. In my memorandum and order of May 29, 2007, I noted that the petition was not filed within the time periods specified in § 2244(d)(1)(A), (C), or (D). (*See* Filing No. 8 at 4-5.) I found that there was a genuine issue, however, as to whether the petition was filed within the time period specified in § 2244(d)(1)(B). (*Id.* at 5-8.) Based on the evidence now before me, I find that there is no longer a genuine issue on this question.

First, a physician, Natalie Baker, with personal knowledge of Petitioner and who treated him from April 19, 2002, to August 16, 2007, has sworn "to a reasonable degree of medical certainty" that during those five years "Richard Allen's thoughts have been organized and he has had good reality testing and I have never observed in him any psychosis." (Filing No. 12-31, Attach. 30, at CM/ECF p. 2.) More specifically, the doctor stated that Allen was diagnosed with a "mood disorder not otherwise specified" which may have been "secondary to general medical condition (head trauma)." Accordingly, he was prescribed Prozac 20 mg every morning and Valproic acid and Elavil for headaches. She added that Petitioner had done "well" and was "fairly stable. No suicidal or homicidal ideation. No psychotic signs or

-10-

symptoms. No manic or hyper manic behaviors. [C]ognition is grossly intact. He remained active in intensive outpatient treatment and is working in the housing unit." (*Id*. at CM/ECF pp. 1-2.) "[N]o functional impairment [was] noted" and "his thoughts appeared organized." (*Id*. at CM/ECF p. 2.) In support of his petition, Allen submitted medical records purporting to show that he suffered from a mental impairment that, in combination with the State's failure to provide him with legal assistance, prevented him from filing a timely petition. (*See* Filing No. 2.) But his evidence does not contradict Dr. Baker's opinion that the Petitioner has had "organized" thoughts, "good reality testing," and no observable psychosis during a period that encompasses the time between March 6, 2002, and August 18, 2003, during which the one-year statute of limitations lapsed. *See, e.g.*, *Riddle v. Kemna*, 523 F.3d 850, 852 (8th Cir. 2008) (holding that the petitioner's direct appeal became final, and the one-year limitations period began to run, on the date that the court of appeals issued its mandate); *Curtiss v. Mount Pleasant Correctional Facility*, 338 F.3d 851, 853-55 (8th Cir. 2003) (explaining that the time between the completion of direct review of a conviction and the filing of an application for state post-conviction relief is filed counts against the one-year federal statute of limitations). Indeed, for the most part, Petitioner's evidence refers to dates not relevant to the limitations period, and those few documents that do address the relevant time period simply do not raise any genuine issue as to whether mental health problems rendered him unable to comply with the statute of limitations. *Cf. Ledin v. Carlson*, No. Civ. 02-4783ADMRLE, 2004 WL 483197, at *3 (D. Minn. March 10, 2004); *Collins v. Scurr*, 230 F.3d 1362, 2000 WL 1341544 at *1 (8th Cir. 2000) (per curiam).

Second, the record now establishes that the prison provided a law library for Allen's use. (Filing No. 12-26, Attach. 25, at CM/ECF p. 1 (making provision for typing equipment, supplies, materials, notary services and photocopies of legal documents and providing that each law library will "have available one or more self-help manuals on legal research, one or more form books on pleading and practice, and one or more video tapes on legal research.") Because Allen admits that he is not

illiterate (filing no. 2 at CM/ECF p. 2 ¶ E), and because the uncontroverted doctor's affidavit establishes that Allen was not impaired, the provision of a law library for Allen's use was all that he was due. *See*, *e.g.*, Schrier v. Halford, 60 F.3d 1309, 1313 (8th Cir. 1995) ("the right of meaningful access to the courts requires prison authorities *either* to provide prisoners with adequate law libraries *or* to provide them with adequate assistance from persons trained in the law.") (Emphasis in original.)

Third, Allen points to the ignorance of Gray, the prisoner that he engaged to help him, and who later became a legal aid, to justify his failure to comply with the one-year statute of limitations. However, our Court of Appeals has held that such simple negligence on the part of a state-provided advisor is not enough to toll the statute of limitations. *See*, *e.g.*, Finch v. Miller, 491 F.3d 424 , 427 (8th Cir. 2007) (state post-conviction counsel's alleged failure to properly advise a habeas petitioner was not a state created impediment that would toll the AEDPA statute of limitations). Moreover, Gray's error can hardly be attributed to the prison because he confirms that legal training was available to him from the prison, but that he failed to take advantage of it. (Filing No. 19, at CM/ECF p. 2 & ¶ 2.)

Finally, the Court of Appeals has ruled that even incarcerated but otherwise competent pro se litigants like Allen are presumed to know the law and are thus presumed to know of AEDPA's one-year statute of limitations. Baker v. Norris, 321 F.3d 769, 771-72 (8th Cir. 2003) (affirming dismissal of habeas petition as time-barred and concluding that "[p]risoners are not exempt from the principle that everyone is presumed to know the law and is subject to the law whether or not he is actually aware of the particular law of which he has run afoul."). Therefore, Allen's ignorance of AEDPA's one-year limitations period is no defense.

### B. *The Ineffective Assistance of Counsel Claim Must Be Denied*

Allen asserts that his defense counsel was ineffective because he failed to investigate, discover and assert Allen's diminished capacity as a defense at trial or at sentencing. (Filing No. 1 at CM/ECF p. 5.) Even if the statute of limitations had not run, this claim must be denied. There are at least two reasons why that is so.

*1. The Ineffective Assistance of Counsel Claim Was Procedurally Defaulted*

First, the ineffective assistance of counsel claim is procedurally defaulted and Allen has not excused the default. Allen has never presented his current claim to the Nebraska Supreme Court and he cannot do so now.

In his first state post-conviction motion, Petitioner raised a claim of ineffective assistance of counsel, generally arguing that O'Brien should not have allowed him to enter a no-contest plea because of his mental condition.[2] However, Allen never properly presented that claim, or the materially different one he raises in this action, to the Nebraska Supreme Court after the Nebraska Court of Appeals ruled against him. While Allen filed a petition for further review with the Nebraska Supreme Court after the denial of his first motion, the petition for further review was overruled because it was not timely filed. Allen tried to raise a claim similar to the one presented here in his *second* state post-conviction action, but Allen's second motion was denied on procedural grounds because it was considered improperly successive under state law. He tried again a third time and that attempt was denied again because it was successive.

A habeas petitioner must first fairly present the merits of each claim he or she wishes to litigate in federal court to the state courts. 28 U.S.C. § 2254(b)(1). *See also Anderson v. Harless*, 459 U.S. 4, 6 (1982) (A claim is properly presented when the

---

[2]Applying *Strickland*, Judge Flowers rejected this argument and the Court of Appeals affirmed. That decision, which Allen does not directly challenge here, is entitled to deference. *See, e.g.,* 28 U.S.C. §§ 2254(d)(1), (d)(2) & (e)(1).

-13-

state courts are given a "'fair opportunity' to apply controlling legal principles to the facts bearing upon [the claim].") (quoting *Picard v. Connor*, 404 U.S. 270, 275, 277-78 (1971)). In Nebraska, a "fair opportunity" ordinarily means that the merits of each habeas claim must be presented to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Nebraska Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454 (8th Cir. 2005) (Nebraska law required habeas petitioner to file a petition for further review with the Nebraska Supreme Court in order to exhaust his available state court remedies after his conviction was affirmed by the Nebraska Court of Appeals; state rules indicated that such a procedure was considered the ordinary process because mandate could not issue until the 30-day period for filing such a petition had lapsed) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) (requiring a petitioner to exhaust one complete round of the State's established appellate review process)); *Akins v. Kenney*, 533 F.Supp. 2d 935, 947 (D. Neb. 2008).

As a general rule, Nebraska courts "will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion. The need for finality in the criminal process requires that a defendant bring all claims for relief at the first opportunity." *State v. Moore*, 718 N.W.2d 537, 542 (Neb. 2006) (death penalty case holding that constitutional challenge to statutorily mandated method of execution was procedurally barred) (internal citation omitted), *cert. denied*, 127 S. Ct. 1134 (2007). In Nebraska, if you have been allowed to present an ineffective assistance of counsel claim in a post-conviction action, you cannot file another such action by changing your assertion about how your lawyer erred. *See, e.g.*, *State v. Luna*, 434 N.W.2d 526, 527 (Neb. 1989) (holding that district court's order denying an evidentiary hearing and overruling prisoner's motion for post-conviction relief alleging ineffective assistance of counsel was not erroneous, where defendant had previously made a motion for post-conviction relief alleging ineffective assistance of counsel which was denied, even though allegations in new

-14-

motion were grounded in different errors allegedly committed by counsel as compared with those cited in prior post-conviction relief attempt).

If a petitioner fails to "fairly present" his claim to the state courts, and he can no longer present the claim to the state courts because, for example, a state court rule prohibits serial litigation, then the federal court will be precluded from considering the claim unless the petitioner fits into one of two exceptions. *See*, *e.g.*, *Winfield v. Roper*, 460 F.3d 1026, 1034 (8th Cir. 2006), *cert. denied*, 127 S. Ct. 2256 (2007). That is, the petitioner must demonstrate "cause and prejudice" or a "miscarriage of justice" (like "actual innocence") in order to prosecute a claim when that claim has not been, and cannot be, fully and fairly asserted in the state courts. *Id*.

In summary, Allen never timely presented the merits of the ineffective assistance of counsel claim he presents here to the Nebraska Supreme Court and he cannot do so now. He has not excused his default by showing that he is actually innocent or that there was a miscarriage of justice. Consequently, Allen's ineffective assistance of counsel claim must be denied because it is procedurally defaulted.

*2. The Ineffective Assistance of Counsel Claim Has No Merit*

Even when there is a procedural question presented, a court may alternatively reach the merits where the record is adequate to do so. *See*, *e.g.*, *Winfield*, 460 F.3d at 1038 (where the record before the court presented adequate information upon which to base a decision on the merits of the petitioner's ineffective assistance of counsel claim, a court may alternatively consider the merits of the petitioner's claim rather than concentrating only on procedural questions); *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) ("Although the procedural bar issue should ordinarily be resolved first, judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated.") (en banc). Indeed, 28 U.S.C. § 2254(b)(2) provides: "An application for a writ of habeas

corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."

To be eligible for habeas relief based on ineffective assistance of counsel, a petitioner must meet the two part test announced in *Strickland*, 466 U.S. at 687. He or she must first establish that counsel's representation was constitutionally deficient, which requires a showing that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). The *Strickland* standard requires that courts give a "heavy measure of deference" to a lawyer's decision not to look into every nook and cranny. *See*, e*.g.*, *Nooner v. Norris,* 402 F.3d 801, 808 (8th Cir. 2004) (alleged failure to pursue psychiatric testimony or mental evaluation for purposes of sentencing in capital murder case not actionable); *King v. Kemna*, 266 F.3d 816, 824 (8th Cir. 2001) (en banc) (alleged failure to investigate and present evidence of diminished capacity not actionable in assault case). If the claimant establishes the first element, the petitioner must then show that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. This requires proving that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been more favorable to the petitioner. *Id*. at 694-95. A reasonable probability is one "sufficient to undermine confidence in the outcome." *Wiggins,* 539 U.S. at 534. Merely showing a conceivable effect is not enough. *Winfield*, 460 F.3d at 1033.

Allen has wholly failed to present, and the record is otherwise devoid of, any credible basis to believe that O'Brien's representation was deficient, or that Allen was prejudiced, because of O'Brien's alleged failure to investigate, discover and assert Allen's alleged diminished capacity as a defense at trial or sentencing. This is particularly true given (1) Allen's damning admissions to third-parties and the police essentially confessing to a drunken but intentional sexual assault of an 84-year-old woman who Allen admitted he intensely disliked, and (2) the affidavit of a prison doctor, who treated Allen for five years, stating that "no functional impairment [was]

-16-

noted[.]" *Cf.* *King*, 266 F.3d at 824-25 (in prosecution for assault of defendant's brother, counsel was not ineffective in failing to investigate diminished capacity defense even though defendant suffered a gunshot wound to the head; petitioner also failed to show prejudice, particularly given the "defendant's unprovoked and life-threatening attack on his brother.").

### C. Allen's "Plain Error" Claim Must Be Denied

Allen claims "plain error" because Judge Flowers allegedly "advised Petitioner Allen that he had waived his right to appeal his no-contest plea . . . ." (Filing No. 1 at CM/ECF p. 6.) He claims that he was prejudiced by this erroneous advice because he was not able to challenge O'Brien's ineffective assistance of counsel. (*Id.*) This claim must be denied for three separate reasons.

First, as with the ineffective assistance of counsel claim, this claim is barred because it is procedurally defaulted. Allen tried to raise this claim in his *second* post-conviction action, but that attempt was denied because of Nebraska's ban on successive post-conviction actions. As a result, this claim has never been presented on the merits to the Nebraska Supreme Court, and it cannot be presented now. Allen has failed to excuse this default by showing that he is actually innocent or that there was a miscarriage of justice.

Second, the factual predicate for Allen's argument is entirely lacking. In substance, Judge Flowers advised Allen that if she accepted the no-contest plea he waived pretrial suppression issues. (*Compare* Filing No. 12-2, Attach. 1, at CM/ECF pp. 14-15 *with* Filing No. 12-3, Attach. 2, at CM/ECF p. 1.) In other words, when one reads the transcript in context, it is clear that Judge Flowers *did not* tell Allen that he was barred from appealing the decision to accept his guilty plea.

Third, even accepting Allen's misunderstanding of the transcript and assuming,

without deciding, that Allen's claim of "plain error" raises a federal procedural due process argument (as opposed to a state law matter), it must denied. While Allen claims that he was prejudiced as a result of the judge's statement because he was wrongly induced not to attack the quality of O'Brien's representation, the record conclusively demonstrates that Allen suffered no injury. In his first state post-conviction action, Allen was allowed to bring a claim that O'Brien was ineffective and that claim was denied on the merits by Judge Flowers and the Nebraska Court of Appeals. Thus, despite the assertion of harm, the record conclusively establishes that there was none.

IT IS THEREFORE ORDERED that Allen's Petition for Writ of Habeas Corpus (filing no. 1) is denied and dismissed with prejudice. A separate judgment will be issued.

Dated September 23, 2008.

> BY THE COURT
>
> s/ Warren K. Urbom
> United States Senior District Judge